Dave M. MATHEWSON, Plaintiff,

v.

**FLORIDA GAME AND FRESH WATER FISH COMMISSION, et al., Defendants.**

No. 86–58 Civ–T–10(A).

United States District Court, M.D. Florida, Tampa Division.

March 24, 1988.

---

John P. McAdams, William F. Jung, Tampa, Fla., for plaintiff.

Lynda Quillen, Harry F. Chiles, Tallahassee, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HODGES, Chief Judge.

This is an action claiming religious discrimination in employment, brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII). The case was tried to the Court on September 21—23, 1987.

The Plaintiff, Dave M. Mathewson, is a former Wildlife Lieutenant of the Defendant, the Florida Game and Fresh Water Fish Commission, and is a member of the Seventh-day Adventist faith. The tenets of the Seventh-day Adventist faith prohibit work on the Sabbath which is the period between sundown Friday and sundown Saturday. The Plaintiff was discharged for insubordination after refusing to work Saturday February 12, 1983. The Plaintiff contends that he was discharged in violation of Title VII because the Defendant failed to make a reasonable accommodation of his desire not to perform Sabbath work. The Defendant contends that it made efforts to reasonably accommodate the Plaintiff's religious convictions.

Prior to trial the parties stipulated to the dismissal of Plaintiff's 42 U.S.C. § 1983 claims and of all individually-named Defendants. They also stipulated the Defendant Department of Administration, Division of Retirement, is a party only to effect any equitable or injunctive relief which might be ordered.

The parties have further stipulated to many of the facts. Other facts adduced at trial were not disputed. The parties agree that the Commission first hired the Plaintiff in early 1963 as a Wildlife Officer assigned to Gulf Hammock, Levy County, within the Commission's Northeast Region. In 1968 the Plaintiff was promoted to the position of Area Law Enforcement Supervisor with the rank of Lieutenant. As a lieutenant the Plaintiff was assigned to the Commission's South Region, headquartered in Lakeland, Florida. Thereafter, Plaintiff's rank, position and area of responsibility remained essentially the same until his termination on March 21, 1983.

At the trial the Plaintiff testified that he was a sworn law enforcement officer charged primarily with enforcing Florida's game and fresh water fish laws and regulations. However, the Plaintiff's duties were not limited to the enforcement of game and fish laws. As a lieutenant he supervised four Wildlife Sergeants who, in turn, supervised five to seven Wildlife Officers each. The Plaintiff's time was, for the

most part, divided equally between time in the office performing administrative tasks and time "in the field" supervising his officers and performing law enforcement duties.

The "South Region" consists of thirteen counties, or about one-fifth of the State of Florida. The Plaintiff's geographic area of responsibility included half of those counties; Lieutenant Doxey, who also was headquartered at Lakeland, supervised the remaining counties. Lieutenant Doxey's geographic area of responsibility and duties were equal to the Plaintiff's. They were the only Wildlife Lieutenants in the region.

The Plaintiff and Doxey were both supervised by Captain Floyd Buckhalter, Regional Law Enforcement Supervisor assigned to the Lakeland office. Captain Buckhalter reported to Lieutenant Colonel Brantly Goodson, Director of the Division of Law Enforcement in Tallahassee, Florida. The Executive Director for the Commission has, at all times relevant to this action, been Colonel Robert M. Brantly, whose office is also located in Tallahassee.

It is not disputed that sometime in 1975 the Plaintiff became a Seventh-day Adventist, and that the tenets of the Seventh-day Adventist faith prohibit working on the Sabbath which is from sundown Friday until sundown Saturday. Nevertheless, the Plaintiff continued to work on his Sabbath, especially during peak activity times such as the first days of dove hunting season and general hunting season.[1] The Plaintiff stated that in 1980, however, his faith began to grow stronger and he generally ceased to work Saturdays during the daylight hours. The Plaintiff stated that he worked two Saturdays in 1980 during the daylight hours. Plaintiff's Biweekly Activity Report reflects that he did work the first day of the general hunting season, Saturday, November 8, 1980 (Plaintiff's Exhibit 19).

Wildlife Lieutenants were not assigned regular days off but scheduled their own work and were expected to be on duty irregular hours with varying days off. The purpose of this practice was to prevent game poachers from being able to predict the absence of Wildlife Officers from the area. The Plaintiff's position description, signed by him on October 17, 1978, states in part that his position required:

> Varied working hours, works most weekends, holidays, and nights. This employee is responsible for the protection of wildlife, fish, ecology and environment in his assigned area and is on call 24–hours a day.

(Defendant's Exhibit 28).

Nevertheless, after November 8, 1980, the Plaintiff again ceased working during daylight hours on Saturday. Sometime in early 1981, at an Organization of Florida Fishermen meeting, the Plaintiff discussed his need for religious accommodation with Colonel Goodson. Colonel Goodson also discussed certain health problems he believed the Plaintiff was experiencing. Based upon this discussion, Colonel Goodson offered the Plaintiff the job of First Sergeant in the Lakeland office at no reduction in pay. He had also previously offered the Plaintiff that job when the position was first created in 1980, but the first offer was apparently not an attempt to accommodate the Plaintiff's religious needs which were unknown to Goodson at the time.

The position of First Sergeant was an office job which would require weekend work only in case of extreme emergency. Colonel Brown testified that he could not recall a single emergency which had required the officer holding the position to work on a weekend.

According to Colonel Goodson, the position was offered to the Plaintiff both as an accommodation to his religious beliefs and to resolve the Plaintiff's stated health problems. Colonel Goodson further testified that he ordered the Plaintiff to undergo a physical examination on February 26, 1981 (Plaintiff's Exhibit 1), and the results showed that the Plaintiff had no health problems. Following this determination,

---

**1.** Weekends and holidays are peak periods for wildlife officers because those are the times when by far the greatest numbers of hunters and fishermen are in the field.

the offer of the First Sergeant's position remained open solely as an accommodation to Plaintiff's religious beliefs.

The Plaintiff refused the offer, stating that he did not want a desk job and preferred to remain in the field. He also did not want to accept a reduction in rank. The reduction in rank would not have been accompanied by a reduction in salary, but the Plaintiff feared that his salary would have been frozen for a period of time and that future increases would not be as large as those given the rank of Lieutenant.

The sergeant's position was not offered to the Plaintiff after the end of March, 1981, because the position was filled by another employee who remains in the job. It is undisputed that the Plaintiff's superiors did not warn him at the time of the offer that adverse consequences might result if he did not take the office job, or that refusal to work Saturdays would lead to discipline or discharge.

Following this series of events, Captain Buckhalter again cautioned the Plaintiff to vary his working hours, stating on the Plaintiff's July 27, 1981, evaluation that he needed to "vary [his] work schedule to include weekends. Get more directly involved with troops" (Plaintiff's Exhibit 25). The Plaintiff did work during the daylight hours on Saturday, October 3, 1981, the opening day of dove hunting season, as shown by Defendant's Exhibits 34 and 50. The Plaintiff testified that he also worked a track inspection, as ordered by Captain Buckhalter, on Saturday, October 31, 1981. The Plaintiff did not work again on Saturday, however, until November of 1982.

In this interim period Captain Buckhalter discussed the Plaintiff's work habits with him on several occasions, especially his failure to work on weekends. In a letter to the Plaintiff dated February 23, 1982, Captain Buckhalter noted that the Plaintiff had worked only three days on a Saturday or Sunday since November 6, 1981, through January 28, 1982 (Plaintiff's Exhibit 2). In the February 23 letter, Captain Buckhalter reminded the Plaintiff of his responsibility to plan his work schedule and of the fact that "an officer's major contacts with the public come primarily on the weekends." Captain Buckhalter further noted that "it appears that you are neglecting your duties by a lack of supervision at a time when an officer's activity is at its peak" (Plaintiff's Exhibit 2).

On September 1, 1982, the Plaintiff and Captain Buckhalter met with Colonel Goodson in Tallahassee regarding the Plaintiff's continued failure to work on weekends (Plaintiff's Exhibit 7). Following this meeting, the Plaintiff advised Colonel Goodson by letter dated September 7, 1982, that due to the dictates of his religion he could not work on Saturdays. The Plaintiff indicated that, if necessary, he would work every Sunday (Plaintiff's Exhibit 4).

On the same date, September 7, 1982, the Plaintiff signed the last evaluation given him by Captain Buckhalter (Plaintiff's Exhibit 26). The Plaintiff was evaluated as conditional in the areas of "dependability" and "supervisory ability," although his overall rating was satisfactory. The evaluation noted certain problems not previously mentioned in the Plaintiff's evaluations. Specifically, Captain Buckhalter indicated that Plaintiff "displayed little or no interest in his work" and that he was "unwilling to accept responsibility." The Captain also noted that the Plaintiff "worked well with others" and "puts in a lot of hours." *Id.*

On September 20, 1982, Colonel Goodson responded to the Plaintiff's letter of September 7 (Plaintiff's Exhibit 5). Colonel Goodson first delineated the Plaintiff's working hours as prescribed by Item 28 of his position description, and then further stated:

I think you would agree that in order for a Lieutenant to effectively supervise the subordinates under his control, he must be ready to work any weekends or holidays that would convince his subordinates that he is fully concerned with the workloads and problems any day of the week. In addition, I am sure you are aware in personnel management you cannot give preferential treatment for one individual in a class.

On this basis, your statement that you could not work any Saturday can not

[sic] be accepted. We trust that you understand this administrative decision and that you will govern yourself accordingly.

*Id.*

Saturday, October 2, marked the opening day of dove season in 1982. Lieutenant Doxey testified that he worked this opening day for the Plaintiff, at the Plaintiff's request. Lieutenant Doxey also worked Sunday, October 3, 1982, as did the Plaintiff (Defendant's Exhibit 39; Plaintiff's Exhibit 20). However, the Plaintiff did not work the two days prior to the opening of dove season or the four days after Sunday, the second day of the season (Plaintiff's Exhibit 20). At trial, Lieutenant Doxey indicated that, while he worked the opening day of hunting season for the Plaintiff voluntarily, if problems requiring the attention of a lieutenant arose simultaneously in both areas of the region, he would be hard-pressed to respond to both problems. He also indicated that he would give priority to problems arising in his own area of responsibility. Doxey further testified that on one occasion when supervising in the Plaintiff's portion of the region he cited one of the Plaintiff's officers and was later told that what they did in that area was none of his business. He testified that he got the distinct feeling that he had overstepped his bounds by taking the action he took.

Following Plaintiff's failure to work the opening day of dove hunting season on October 2, 1982, Captain Buckhalter, orally and in a letter dated October 8, ordered the Plaintiff to work the weekend of October 9–10, 1982, "due to the fact that Lieutenant Doxey covered your responsibilities opening day" (Plaintiff's Exhibit 6). In this letter, Captain Buckhalter further stated that the Plaintiff did not use good judgment when he failed to work the first day of dove season, that he had planned poorly as a supervisor by not working the four days after the opening weekend, and that the letter should be considered a written reprimand. *Id.* Captain Buckhalter went on to state:

> While we respect your religious belief, we cannot tolerate shirking your respon-sibilities by not working on opening days of hunting seasons. As you are well aware, it is vital that the ultimate cover-age is needed on opening days. This matter has been discussed with you and it is a requirement of your assigned duties and responsibilities.

Captain Buckhalter further warned that "open defiance will not be tolerated and if further violations occur, more severe disci-plinary action will be taken." The Plaintiff was further ordered "to work on a random basis on all seven of the days of the week;" to work especially on November 13, 1982, the first day of general hunting sea-son; and to work on "one Saturday and one Sunday as well as a continuous weekend" in each four-week cycle until notified dif-ferently. *Id.*

The Plaintiff did not work on Saturday, October 9, 1982, as ordered. This was re-ported to Colonel Goodson in a letter dated October 12, 1982, from Captain Buckhalter (Plaintiff's Exhibit 7). By letter dated Oc-tober 15, 1982, Colonel Goodson notified the Plaintiff that he was charged with in-subordination and was subject to suspen-sion for failure to obey the oral and written orders of Captain Buckhalter (Plaintiff's Exhibit 8). The Plaintiff also was advised by Colonel Goodson of his right to a predet-ermination conference prior to the contem-plated suspension. *Id.*

The predetermination conference regard-ing the Plaintiff's suspension was held on November 5, 1982 (Plaintiff's Exhibit 10). Prior to this conference, R.E. Pleasants, Jr., Director of Public Affairs and Reli-gious Liberty Department for the Religious Liberty Association of America, wrote Colonel Goodson stating:

> Lt. Mathewson is an active member of the Lakeland Seventh-day Adventist Church, Lakeland, Florida. Seventh-day Adventists observe the Sabbath from sundown Friday evening to sundown Sat-urday evening refraining from secular employment as well as personal recrea-tional activities. These hours are devot-ed to spiritual activities in harmony with the teaching of God's Word. He is re-questing that he be given reasonable ac-

commodations because of his Sabbath observance.

(Plaintiff's Exhibit 9)

In a letter to the Plaintiff dated November 9, 1982, Colonel Robert M. Brantly, Executive Director of the Florida Game and Fresh Water Fish Commission, upheld the recommended three day suspension, noting that the Plaintiff had previously been offered the position of Wildlife First Sergeant which normally did not require Saturday work, and that the Plaintiff had refused it. Colonel Brantly stated that the Commission felt this to be a reasonable accommodation to the Plaintiff's religious beliefs (Plaintiff's Exhibit 10). In this same letter, Brantly noted that the Commission had offered, in the alternative, that the Plaintiff would "be permitted which Saturday in combination with a weekend you want to work." *Id.* Colonel Brantly further stated that the Plaintiff's suggestion that his subordinate Sergeants or the region's other Lieutenant be assigned to cover random Saturdays or opening hunting days (Saturdays) was unacceptable. Any further refusal to work as ordered, the Plaintiff was told, would result in further disciplinary action. *Id.*

The Plaintiff responded to Colonel Brantly by letter dated February 1, 1983, that he felt his suspension to be unjust. Plaintiff stated that since he had been "advised the Commission was in error in their actions and was so informed prior to my suspension, I am requesting three days pay be forwarded to me and the suspension records be expunged from my files" (Plaintiff's Exhibit 11).

Subsequent to the Plaintiff's suspension, he was again ordered to work a special detail, from Thursday, February 10, 1982, through Saturday, February 12, 1982, at the Fox Hunter's Field Trials in the Croom Wildlife Management Area (Plaintiff's Exhibit 13). Testimony at trial revealed that the Croom Area Fox Hunter's Field Trials had been a serious problem for the Commission each year it was held and was the source of numerous citizen complaints. Wildlife Officer Joe Johnson testified that several complaints had been lodged against him as a result of his attempts to enforce game and fish laws at the field trials, and that there were times when he both desired and needed a supervisory official there to handle things which he, as a Wildlife Officer, could not. Sergeant Fletcher Wilkinson had been promoted to the position of Sergeant in the region not long before February 10, 1982, and had never handled field trials at the Croom Area. Sergeant Wilkinson stated that the Croom Field Trials were very different from any previous trials he had handled, and that he, too, encountered problems there. The Plaintiff did not work the field trials on Saturday, February 12, 1982, as ordered, because he did not believe it was an emergency situation.

Based upon this second refusal to work as ordered the Plaintiff was terminated from his position with the Commission (Plaintiff's Exhibit 18). The termination was in accord with Commission policy (Defendant's Exhibit 27). Prior to his termination the Plaintiff refused the Commission's offer of a predetermination hearing, indicating that it would be a waste of Commission funds.

## CONCLUSIONS OF LAW

The parties stipulated and the Court concludes that the Court has jurisdiction of this action pursuant to 42 U.S.C. § 2000e–5(f)(3). The parties further agreed that Defendant Commission was, at all times pertinent to this action, the Plaintiff's "employer," and that the Plaintiff was an "employee," as those terms are defined in 42 U.S.C. §§ 2000e(b) and 2000e(f), respectively. Finally, the parties agreed not to contest whether the Plaintiff satisfied the conditions precedent necessary to maintaining his suit in this forum.

The Plaintiff claims that he was terminated from his employment with the Commission in March 1983 because of his religion, in violation of Title VII, 42 U.S.C. § 2000e–2(a)(1). The term "religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's ... religious observance or practice with-

out undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

■ The Supreme Court, in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75, 97 S.Ct. 2264, 2272, 53 L.Ed.2d 113 (1977), held that section (j) imposed on an employer a "statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." This includes an obligation to reasonably accommodate employees who, because of their specific beliefs and practices, refuse to work on particular days of the week. *See Boomsma v. Greyhound Food Management, Inc.*, 639 F.Supp. 1448, 1452 (W.D.Mich. 1986); *Murphy v. Edge Memorial Hospital*, 550 F.Supp. 1185 (M.D.Ala.1982).

■ In order for the Plaintiff to prove that the actions taken against him were intentional and were taken because of his religion, he must first establish a *prima facie* case by showing that "he had a bona fide religious belief that conflicted with an employment requirement, that he informed his employer of this belief and that he was discharged for failing to comply with the conflicting employment requirement." *Brener v. Diagnostic Center Hospital*, 671 F.2d 141, 144 (5th Cir.1982). The parties, prior to trial, agreed that the Plaintiff met these standards and the evidence confirmed that agreement.

After the Plaintiff has established a prima facie case, the Defendant must show either that it offered the Plaintiff a reasonable accommodation of his religious practices, or that any accommodation of the Plaintiff's practices would result in undue hardship to the employer. However, to be in compliance with Title VII an employer need not give an employee a choice among several accommodations; nor is the employer required to demonstrate that alternative accommodations proposed by the employee entail undue hardship. *Ansonia Board of Education v. Philbrook*, 479 U.S. 60, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986). "[A]n employer has met its obligation under § 701(j) when it demonstrates that it has offered a reasonable accommodation to the employee." *Id.* at 372. The Plaintiff does not dispute that the offer of the First Sergeant position was an offer of a reasonable accommodation even though it would have been a demotion for the Plaintiff. Rather the Plaintiff argues that the offer was not a reasonable accommodation because he had no motivation to accept a demotion to a desk job when he was not informed that his refusal to work Saturdays would result in his termination. The Plaintiff contends that at the time the offer was made he had no reason to believe that his superiors considered his refusal to work Saturdays as a problem; he had been working infrequently on Saturdays for some time without adverse consequences. He testified at trial that if he had been offered the position in 1983, the year he was terminated, he would have accepted the job.[2]

■ However, the demotion was offered to the Plaintiff so that he could avoid a conflict between his job and his religious convictions. The fact that it was not offered in the form of an ultimatum does not diminish the force or status of the offer as an attempt to accommodate the Plaintiff's religious practices. The law requires only that the employer afford a reasonable accommodation. *Ansonia Board of Education v. Philbrook, supra.* Moreover, the employee also owes a duty of "bilateral cooperation." *Id.*, 107 S.Ct. at 372. Nor does the Defendant's subsequent tolerance of the Plaintiff's failure to schedule himself for Saturday work negate the reasonableness of the attempted accommodation. A contrary conclusion would, as a policy matter, serve to discourage accommodation and promote precipitous action.

Accordingly, it is the finding of the Court that the offer of the First Sergeant position to the Plaintiff was an offer of reasonable accommodation, and by this offer the Defendant satisfied the requirements of Title VII. This cause is DISMISSED with preju-

---

**2.** The Plaintiff is not arguing that he should have been offered this position before he was fired. The position was filled at that time.

dice, with costs to be assessed according to law. The Clerk is Directed to enter judgment accordingly.

IT IS SO ORDERED.