**Aston A. BEADLE, Plaintiff–Appellant,**

v.

**HILLSBOROUGH COUNTY SHERIFF'S DEPARTMENT, Walter C. Heinrich, Sheriff of Hillsborough County, Florida, Defendants–Appellees.**

No. 93–3266.

United States Court of Appeals,
Eleventh Circuit.

Aug. 23, 1994.

Lee Boothby, Boothby & Yingst, Washington, DC, for appellant.

Mark A. Hanley, Thompson, Sizemore & Gonzalez, P.A., Tampa, FL, for appellees.

Before COX, Circuit Judge, MORGAN, Senior Circuit Judge, and COLLIER *, District Judge.

* Honorable Lacey A. Collier, U.S. District Judge for the Northern District of Florida, sitting by designation.

MORGAN, Senior Circuit Judge:

Appellant Aston Beadle appeals a final judgment entered against him by the United States Magistrate Judge for the Middle District of Florida and in favor of the Hillsborough County Sheriff's Department ("Department").[1] The judgment rejects Beadle's contention that the Department violated Title VII of the Civil Rights Act of 1964 by failing to accommodate Beadle's religious practices and by ultimately discharging him from his employment with the Department because of his refusal to work on his sabbath. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we AFFIRM.

## I. FACTUAL BACKGROUND

Appellant Beadle is currently, and has been at all times pertinent to this action, a member of the Seventh Day Adventist Church. As a practicing Seventh Day Adventist, Beadle does not engage in secular labor on his sabbath—a period lasting from sundown Friday to sundown Saturday. Beadle, a former employee of the Hillsborough County Sheriff's Detention Department, brought this action after the Department scheduled him to work a Friday evening shift. Instead of completing his shift, Beadle left his post early in order to observe his sabbath. The Department subsequently terminated Beadle as a result of this action. Beadle's main contention at trial was that his discharge was unlawful under Title VII, as the Department had failed to "reasonably accommodate" his religious practices under the statute.

Beadle first became employed with the Sheriff's Detention Department in January of 1986, after responding to an advertised opening for employment. The Detention Department is responsible for securing the safety of the Hillsborough County prison and, as such, operates seven days a week, twenty-four hours a day, year round. Although Beadle was apparently aware of this fact when he applied for the position, he never mentioned his religious need for permanent days off until he had completed his required eleven-

1. The record indicates that the parties consented to trial by the Magistrate Judge.

week training period at the Corrections Recruit Academy and had received his initial work schedule.

The schedule, made pursuant to a neutral rotating shift system used by the Sheriff's Department, indicated that Beadle's first shift required that he work on Fridays and Saturdays.[2] Dissatisfied with this requirement, Beadle contacted his commanding officer, Colonel David Parrish, and notified him of his religious conflict with the schedule. Parrish responded by suggesting that Beadle make a written request for permanent Fridays and Saturdays off for the Department to consider. Beadle complied, and the Department then submitted the question of whether the law required such an accommodation to its legal advisor for an opinion. While waiting for the legal opinion, the Department adjusted Beadle's work schedule so that he would not be required to work his sabbath.

In April of 1986, the Sheriff's legal advisor responded with an opinion stating that the Department was not required under Title VII to accommodate Beadle by granting him permanent days off. Based on this opinion, the Department advised Beadle that his request had been rejected. Beadle was told, however, that he was free to arrange for shift swaps with the other employees. To aid in this effort, the Department provided Beadle with a roster sheet and authorized him to advertise his need for swaps during daily roll calls and on the Department's bulletin board. The Department further allowed Beadle to request use of his sick days, vacation time and compensation time if he was unable to secure a swap.

Beadle, however, was not satisfied with the Department's response. He maintained that at the very least, his Department supervisors should actively assist him in finding replacements for shifts which conflicted with his sabbath. He also suggested as an alternative that the Department allow him to leave his post as a detention officer and to work instead as a bailiff or as a process server—jobs with the Department which traditionally required only a normal Monday through Friday work week.[3] The Department denied these requests and adhered to its original position that Beadle had been sufficiently accommodated for Title VII purposes.

Beadle was actually able to negotiate a swap with his co-workers on only two occasions.[4] Moreover, the Department did not always approve Beadle's requests for use of vacation or compensation time because the jail was understaffed and the granting of some of these requests could have jeopardized jail security. On one occasion when Beadle was scheduled to work his sabbath and was unable to obtain approval to use his compensation time or to negotiate a swap for his shift, he simply failed to come to work. On a second occasion, Beadle abandoned his post during the middle of his shift, leaving two other deputies alone to supervise an area of dangerous inmates. This second incident ultimately led to Beadle's termination.

## II. DISCUSSION

Title VII of the Civil Rights Act of 1964, as amended, prohibits an employer from discriminating against an employee on the basis of that person's "race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). The term "religion" is defined in the statute as including "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate ... employee's religious observance or practice without undue

2. Under this neutral rotating shift system, detention employees were assigned to one of three overlapping 9.6 hour shifts each day. The day shift was from 7:00 A.M. until 4:36 P.M.; the evening shift was from 3:00 P.M. until 12:36 A.M.; and the midnight shift was from 11:00 P.M. until 8:36 A.M. Each deputy received two consecutive days off during the week. Work assignments rotated forward (i.e., day to evening; evening to midnight, etc.) every two months, while days off rotated backward (i.e., Friday–Saturday to Thursday–Friday; Thursday–Friday to Wednesday–Thursday, etc.) every 28 days.

3. These alternative posts suggested by Beadle, however, additionally required completion of a certain employment probationary period with the Department which Beadle had yet to satisfy.

4. The Magistrate Judge, however, attributed at least some of this difficulty to the fact that Beadle failed to adequately advertise his need for swaps.

hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). The issue presented for our consideration on appeal is whether the Magistrate Judge erred in finding that the Department reasonably accommodated the religious practices of its employee, Aston Beadle, for purposes of Title VII.[5]

■ The phrases "reasonably accommodate" and "undue hardship" are not defined within the language of Title VII. Thus, the precise reach of the employer's obligation to its employee is unclear under the statute and must be determined on a case-by-case basis. *See United States v. City of Albuquerque*, 545 F.2d 110, 114 (10th Cir.1976), *cert. denied*, 433 U.S. 909, 97 S.Ct. 2974, 53 L.Ed.2d 1092 (1977). To aid lower courts in their analysis of these cases, the Supreme Court has provided some guidance by generally defining "undue hardship" as any act that would require an employer to bear greater than a "de minimis cost" in accommodating an employee's religious beliefs. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75, 97 S.Ct. 2264, 2272, 53 L.Ed.2d 113 (1977). The Court has further stated that compliance with Title VII does not require an employer to give an employee a choice among several accommodations; nor is the employer required to demonstrate that alternative accommodations proposed by the employee constitute undue hardship. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68, 107 S.Ct. 367, 371, 93 L.Ed.2d 305 (1986). Rather, the inquiry ends when an employer shows that a reasonable accommodation was afforded the employee, regardless of whether that accommodation is one which the employee suggested. *Id.* We recognize and apply these guidelines in addressing the case before us.

■ Beadle argues that the Department failed to meet its duty to accommodate his religious practices. He contends that the Department's neutral rotating shift system and its authorization of shift swaps within the system were insufficient to meet the requirements of Title VII. We disagree.

In *Hardison*, the Supreme Court was presented with facts similar to those in this case. Hardison was a member of the Worldwide Church of God and also refrained from secular labor on Saturdays in observance of his sabbath. He was hired by Trans World Airlines (TWA) to work as a clerk in the "Stores Department" at its Kansas City base. This Department operated twenty-four hours per day, year round. Hardison was ultimately discharged because of his refusal to work Saturdays and argued that his discharge was unlawful under Title VII because TWA had failed to reasonably accommodate his religious practices. The Supreme Court, however, found that the seniority provisions contained in the collective bargaining agreement between TWA and the union provided such accommodation. Explaining its holding, the Court stated:

It was essential to TWA's business to require Saturday and Sunday work from at least a few employees even though most employees preferred these days off. Allocating the burdens of weekend work was a matter for collective bargaining. In considering criteria to govern this allocation, TWA and the union had two alternatives: *adopt a neutral system*, such as seniority, a lottery, or *rotating shifts*; or allocate days off in accordance with the religious needs of its employees. TWA would have had to adopt the latter in order to insure Hardison and others like him of getting the days off necessary for strict observance of their religion, but it could have done so only at the expense of others who had strong, but perhaps non-religious reasons for not working on weekends....

Title VII does not contemplate such unequal treatment.... It would be anoma-

---

**5.** The Department does not dispute that Beadle's religious beliefs were sincere, nor does it argue with the Magistrate Judge's finding that Beadle established a prima facie case of religious discrimination according to the three part test set out in *Brener v. Diagnostic Center Hospital*, 671 F.2d 141, 144 (5th Cir.1982) (To establish a prima facie case of religious discrimination under Title VII, the plaintiff must present evidence sufficient to prove that (1) he had a bona fide religious belief that conflicted with an employment requirement; (2) he informed his employer of his belief; and (3) he was discharged for failing to comply with the conflicting employment requirement.).

lous to conclude that by 'reasonable accommodation' Congress meant that an employer must deny the shift and job preference of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others, and we conclude that Title VII does not require an employer to go that far.

*Hardison,* 432 U.S. at 80–81, 97 S.Ct. at 2274–75 (emphasis supplied).

Beadle attempts to distinguish the Court's holding in *Hardison* by arguing that there the Court was speaking not of a neutral rotating shift system, but rather of a "bona fide seniority system." While we recognize that *Hardison* specifically concerned the sufficiency of a seniority system under Title VII to determine employee eligibility for weekends off, we are not persuaded that the Court intended that its holding apply only to those systems. Rather, our reading of *Hardison* suggests that the Court was concerned primarily with the neutrality of the system utilized.

Moreover, the facts before us indicate that the Sheriff's Department did more than simply rely on its neutral rotating shift system to accommodate Beadle's religious practices. For example, it is undisputed that the Department allowed Beadle to arrange shift swaps with his co-workers. To aid Beadle in arranging these swaps, the Department provided him with an employee roster sheet which included all his co-worker's schedules. The Department also allowed Beadle to advertise his need for shift swaps during daily roll calls and on the Department's bulletin board. Numerous courts have relied on *Hardison* in holding that similar authorizations of voluntary swaps instituted by employers within neutral rotating shift systems constitute reasonable accommodations under Title VII. *See e.g., Brener v. Diagnostic Center Hosp.,* 671 F.2d 141 (5th Cir.1982); *Smith v. Pyro Mining Co.,* 827 F.2d 1081, 1088 (6th Cir.1987), *cert. denied,* 485 U.S. 989, 108 S.Ct. 1293, 99 L.Ed.2d 503 (1988); *United States v. City of Albuquerque,* 545 F.2d 110 (10th Cir.1976), *cert. denied,* 433 U.S. 909, 97 S.Ct. 2974, 53 L.Ed.2d 1092 (1977). Our interpretation of *Hardison* leads us to the same conclusion in this case.

Finally, we believe it important to note the Magistrate Judge's finding that Beadle failed to take full advantage of the accommodations offered to him by the Department. Although the Department made provisions for Beadle to announce his need for shift swaps during roll call and to advertise his need for swaps on the Department's bulletin board, Beadle did neither of these. While we recognize an employer's duty to reasonably accommodate the religious practices of its employee, we likewise recognize an employee's duty to make a good faith attempt to accommodate his religious needs through means offered by the employer. *See Matthewson v. Fla. Game & Fresh Water Fish Comm'n,* 693 F.Supp. 1044, 1050 (M.D.Fla.1988), *aff'd* 871 F.2d 123 (11th Cir. 1989) (citing *Ansonia,* 479 U.S. at 68, 107 S.Ct. at 372, in recognition of the employee's duty of "bilateral cooperation"); *see also Chrysler Corp. v. Mann,* 561 F.2d 1282, 1285 (8th Cir.1977), *cert. denied,* 434 U.S. 1039, 98 S.Ct. 778, 54 L.Ed.2d 788 (1978). We find that the record adequately supports the Magistrate Judge's finding that Beadle failed to satisfy this duty.

Because we find that the Department reasonably accommodated Beadle's religious practices for purposes of Title VII, we are not required to further consider whether any or all of the accommodations suggested by Beadle would also qualify as "reasonable" under the statute, or whether they would likely result in "undue hardship" to the employer. Following the Supreme Court's decision in *Ansonia,* 479 U.S. at 68, 107 S.Ct. at 372, the inquiry ends once the employer shows, as the Department has here, that a reasonable accommodation was afforded the employee.

## III. CONCLUSION

We find that the Department's attempts to accommodate appellant Beadle's religious practices within the workings of its neutral rotating shift system were "reasonable" for purposes of Title VII. We, therefore, hold that Beadle's discharge from employment with the Department for refusing to work his sabbath was neither discriminatory nor un-

lawful. Accordingly, we AFFIRM the holding of the Magistrate Judge.

AFFIRMED.