**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**BJ SERVICES CO., Defendant.**

**Civil No. 3:94–CV–2037–H.**

United States District Court, N.D. Texas, Dallas Division.

Sept. 26, 1995.

4. See Mr. Farmigoni's deposition pp. 34–36 and pp. 40–44.

5. See Mr. Farmigoni's deposition pp. 44–46.

Suzanne M. Anderson & Chris Meador, Equal Employment Opportunity Commission, Dallas, TX, for Plaintiff.

William J. Bux, Lock Purnell Rain Harrell, Dallas, TX, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

SANDERS, District Judge.

Before the Court are Defendant BJ Service Company's Motion for Summary Judgment, filed June 16, 1995; Plaintiff Equal Employment Opportunity Commission's Response, filed July 3, 1995; and Defendant's Reply, filed July 18, 1995.

## I. BACKGROUND

This is a suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended. The Equal Employment Opportunity Commission ("EEOC") brought this action against Defendant BJ Services Company ("BJ Services") on behalf of Richard Roberson ("Roberson"), a former BJ Services employee, alleging that Roberson was discriminated against on the basis of his religion. Defendant also claims that the EEOC's requested accommodations violate the First Amendment.

The material facts in this case are not in dispute. Roberson was discharged on March 21, 1992 for refusal to work on Saturdays. Plaintiff's Response at 2; Defendant's Brief in Support of Motion for Summary Judgment ("Brief") at 1. In response to his dismissal, Roberson filed a charge with the EEOC alleging religious discrimination because his religious beliefs precluded him from working on Saturday. The EEOC brought this action against BJ Services alleging that 1) BJ Services failed to reasonably accommodate Roberson's religious beliefs; and 2) discharged him in violation of Title VII.

In 1987, Roberson was hired by BJ Services as a Senior Equipment Operator in its Jacksboro, Texas facility. In November of 1990, Roberson became baptized in the Worldwide Church of God. Roberson Deposition at 112, 168. As a member of the Worldwide Church of God, Roberson believed he should refrain from working on the Sabbath, which is from sundown Friday to sundown Saturday. Roberson Deposition at 115. In 1990, Roberson informed Jeff Crawford ("Crawford") and Gary Helmick ("Helmick") of his religious beliefs and requested accommodation to avoid working on the Sabbath. Roberson Deposition at 171; Crawford Deposition at 56. Crawford is the Operations Manager at BJ Services and is responsible for the hiring of equipment operators and reviewing employee performance. Crawford Deposition at 10. Helmick is the District Manager at the Jacksboro facility and is responsible for firing, hiring and promotions. Helmick Deposition at 19.

Crawford informed Roberson that he would do everything possible to accommodate him. Crawford Deposition at 56. It is undisputed that from November of 1990 until March of 1992, Roberson had every Saturday off. Roberson Deposition at 184. In late 1991 through early 1992 BJ Services experienced a reduction in business. The Jacksboro District was instructed by the corporate office of BJ Services to reduce its number of employees and a company-wide hiring freeze was put into effect. Crawford Deposition at 34–35; Helmick Deposition at 75, 83, 133–134. Between November 1991 and March 1992, four equipment operators in the Jacksboro District were either laid off or were terminated without replacement. By March 1992, only eight equipment operators, including Roberson, were available.[1]

Other employees at BJ Services began to express discontent with the preferential treatment being given to Roberson. Crawford Deposition at 65. Days off were routinely being canceled. Crawford Deposition at 34; Helmick Deposition at 137. In addition, other employees' days off were being canceled so that they could work for Roberson. Crawford Deposition at 65.

In March 1992, Crawford notified Roberson that he could no longer guarantee Roberson every Saturday off because of the increased reduction in staff and unfairness to other employees who would have to work their days off to take Roberson's place. Roberson Deposition 197–203. Specifically, Crawford informed Roberson that he would still continue to do everything he could to allow Roberson time off on Saturday, but when the whole yard was needed to be available to work, Roberson was not guaranteed Saturdays off. Roberson Deposition at 197–198; Crawford Deposition at 108.

Roberson was notified on Friday, March 13, 1992, that he was needed to work that Saturday. Prior to requesting that Roberson work on Saturday, Crawford had already scheduled every other available equipment operator to come in to work, including himself. Crawford Deposition at 92–93. Roberson refused to work.[2] Crawford Deposition at 89–92; Roberson Deposition at 211–212.

1. The Commission claims that "at least nine" equipment operators were on the payroll during of March of 1992. Response at 9. BJ Services points out that although there were nine equipment workers employed, one equipment operator was out on disability leave and was unavailable for work during this period. Brief at 5, n. 2. There is no summary judgment evidence that nine workers were available for work on the dates in question.

2. The Court notes that the March 14 job was ultimately canceled that morning at the customer's request due to rain. However, Roberson had already refused to work and been suspended at that time.

As a result of his refusal to work, Roberson was suspended for one week. Crawford Deposition at 89. Although BJ services' discipline policy calls for dismissal on the first offense for refusal to work, Roberson was given one week suspension for lesser offense of not being available for work while on call. Crawford Deposition at 105.

Another large job was scheduled for Saturday, March 21, 1992, the day Roberson's suspension ended. Due to the large size of the job, all equipment operators were needed and there were no other equipment operators available to volunteer to replace Roberson nor to schedule in place of Roberson. Crawford Deposition at 92–93. Roberson refused to work on that Saturday and he was terminated by Helmick. Helmick Deposition at 107, 113.

## II. ANALYSIS

### A. SUMMARY JUDGMENT STANDARD

■ In proper circumstances, awarding summary judgment is not disfavored in the federal courts: "[s]ummary judgment reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir.1986).

■ Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment or partial judgment as a matter of law. *See* Fed.R.Civ.P. 56. Before a court may grant summary judgment, the moving party must demonstrate that it is entitled to judgment as a matter of law because there is no actual dispute as to an essential element of the non-movant's case. *See Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The threshold inquiry, therefore, is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d

202 (1986). Of course, "the substantive law will identify which facts are material." *Id.* at 248, 106 S.Ct. at 2510.

The Supreme Court has explained that a movant for summary judgment need not support the motion with evidence negating the opponent's case; rather, once the movant establishes that there is an absence of evidence to support the non-movant's case, the burden is on the non-movant to make a showing sufficient to establish each element as to which that party will have the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986).

■ Once the burden shifts, the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (emphasis in original) (*quoting* Rule 56(e)); *see also Fontenot*, 780 F.2d at 1195–98. A party must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. Stated another way, "[i]f the record, taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir.1991) (citing *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356). In determining whether a genuine issue exists for trial, all of the evidence must be viewed in the light most favorable to the motion's opponent. *Gremillion v. Gulf Coast Catering Co.*, 904 F.2d 290, 292 (5th Cir.1990). With these summary judgment standards in mind, the Court turns to an analysis of Defendant's motion in this case.

### B. TITLE VII

■■ Title VII makes it an unlawful employment practice "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's ... religion ..." 42 U.S.C. § 2000e–2(a)(1). The term religion "includes

all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's ... religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). Title VII does not guarantee that an employee will be given the accommodation of his choice. *Lee v. ABF Freight System, Inc.*, 22 F.3d 1019 (10th Cir.1994) (citation omitted.) A plaintiff makes out a prima facie case of religious discrimination by establishing that 1) he has a bona fide religious belief; 2) he has informed the employer of this belief; and 3) he is disciplined for failure to comply with the a conflicting employment requirement. *Turpen v. Missouri–Kansas–Texas R. Co.*, 736 F.2d 1022, 1026 (5th Cir.1984).

■ BJ Services assumes that the EEOC can establish a prima facie case of religious discrimination in this suit. Defendant's Brief at 11. Once the employee has established a prima facie case, the burden shifts to the employer to show that it was unable to reasonably accommodate the employee's religious needs without undue hardship. *Turpen*, 736 F.2d at 1026. *See also St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–08, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (Once plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action taken against the plaintiff); *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955 (5th Cir.1993) (A plaintiff cannot defeat summary judgment simply by offering evidence that contradicts the legitimate reason for adverse action; "plaintiff must prove, through a preponderance of the evidence, that the employer's reasons were not the true reason for the employment decision and that unlawful discrimination was.")

In *Trans World Airlines v. Hardison*, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977) the Supreme Court formulated the "de minimis" standard that applies in the determination of whether accommodations are reasonable. In that case, the Supreme Court held that to require an employer to bear more than a de minimis cost in order to provide religious accommodation to an employee is an undue hardship. *Id.* at 84, 97 S.Ct. at 2276–77. "The rationale underlying this determination is that anything more than a de minimis cost would result in discrimination against other employees, a result ... Congress did not intend." *Brener v. Diagnostic Center Hospital*, 671 F.2d 141, 146 (5th Cir. 1982), *citing Hardison, supra* (other citations omitted.)

■ In the instant case, the Court finds that the cost to BJ Services to accommodate Roberson would be more than de minimis. The EEOC and Roberson assert four categories of accommodations that BJ Services could have provided to Roberson: 1) requiring or soliciting voluntary or involuntary replacements for Roberson from the other equipment operators; 2) requiring other "qualified employees" such as salesmen, the district manager or the district operations manager to replace Roberson; 3) borrowing a person from another yard; and 4) canceling a job. Roberson Deposition at 243–259; Roberson Deposition Exhibits 19 and 20; Plaintiffs Answers and Objections to Defendant's First Set of Interrogatories, Interrogatory Nos. 4–5.

Although Plaintiff argues that such accommodations could have been achieved without Defendant suffering undue hardship, the Court is not persuaded. Plaintiff has failed to present summary judgment evidence that these accommodations would not cause BJ Services undue hardship. The first and second alternatives—replacing Roberson with other equipment operators and other "qualified employees"—were options that would or did cause undue hardship to Defendant. Plaintiff asserts that on March 14, 1992, Roberson was replaced by workers that were not classified as equipment operators. Response at 19. However, the March 14 job was canceled due to rain, and thus there was no longer the need for a large crew to complete that job on a Saturday.[3] BJ Services

---

3. In addition, the Plaintiff repeatedly mischaracterizes deposition testimony in its Response. For example, Plaintiff cites to the Crawford and Hel- mick depositions for the allegation that "[o]n March 14, 1995, Roberson was replaced by workers that were not classified as equipment

has presented summary judgment evidence that there were no other equipment operators available to work in place of Roberson.[4]

Plaintiff also asserts that "many field workers are cross trained and can easily perform the work of an equipment operator." Plaintiff's Response at 19. However, there is no summary judgment evidence so indicating. In addition, there is no evidence that BJ Services even has a category of employees called "field workers." Furthermore, Crawford and Helmick testified about the safety concerns of allowing untrained personnel to operate the equipment. BJ Services also presents ample evidence that requiring salesmen and mechanics to operate the equipment was inefficient and would result in decreased production. Crawford Deposition at 84–85.

In support of its argument that other employees were available to fill in for Roberson, Plaintiff asserts that BJ Services can show no "safety problems during the period Roberson was accommodated." The Court finds this argument irrelevant. The proper inquiry is whether the accommodations constituted an undue hardship, and represented more than a de minimis cost, not whether accidents actually occurred.

 BJ Services demonstrates that voluntary (and even involuntary) replacements were not an option because all the other equipment operators were already working, with the exception of two who were on vacation. Crawford Deposition at 92–93; Helmick Deposition at 91–92. Defendant correctly notes that it was not required to deny other employees their vacation days so that they could work in place of Roberson. *Citing Hardison,* 432 U.S. at 81, 84, 97 S.Ct. at 2275, 2276–77; *Eversley v. MBank Dallas,* 843 F.2d 172, 175–76 (5th Cir.1988). In addition, "the cost of hiring an additional worker or the loss of production that results from not replacing a worker who is unavailable

due to a religious conflict can amount to undue hardship." *Lee,* 22 F.3d at 1023, *citing Hardison, supra.*

Plaintiff's argument that borrowing a person from another district was a reasonable accommodation also fails. Although Plaintiff claims that "[t]he Jacksboro office of BJ Services routinely borrowed employees from other locations to service job contracts," this assertion is not supported by the record. In his deposition, Roberson admits that costs would be incurred in bringing in additional employees, although he was not aware of the amount. Roberson Deposition at 243. In addition, Plaintiff mischaracterizes the deposition testimony of Scott Bussell, a BJ Services employee. Bussell testified that *equipment* was occasionally borrowed from other districts, and that an operator sometimes came to operate the equipment, if there were equipment shortages. Crawford testified in his deposition that the costs of bringing in extra employees often exceeded the benefit, in which case the extra employees would not be brought in. Crawford Deposition at 83.

BJ Services demonstrates that the costs involved in bringing in additional equipment operators would total at least $200 per day per person, not including overnight visits, and $1,200 for a three day trip, for work which would cost less than $120 in wages. This is certainly more than a de minimis cost. In addition, the Jacksboro facility has a unique nitrogen process which other districts do not have, and a borrowed employee might not have been able to operate the equipment at the Jacksboro facility. Helmick Deposition at 156–157. Furthermore, BJ Services presents summary judgment evidence demonstrating that most of the other districts were experiencing similar manpower shortages and thus had no employees to lend. Crawford Deposition at 111.

---

operators." However, the deposition portions referenced do not so state. Crawford's testimony indicates that the March 14th job was ultimately completed on Monday, March 17th. The fact that the job was completed without Roberson is irrelevant because there is no scheduling evidence before the Court regarding the Monday job.

4. Specifically, Defendant demonstrates that on both March 14, 1992 and March 21, 1992 (both Saturdays) there were only seven equipment operators available, including Roberson. Helmick Deposition at 91–92.

Finally, BJ Services has demonstrated that the option of canceling a job involves more than a de minimis cost. Deposition of Gerald K. Staires at 100–103. If BJ Services did not get the work done, a competitor would take over the job. *Id.*

The Court finds that all the possible accommodations suggested by the EEOC would have required more than a de minimis cost. Accordingly, summary judgment is **GRANTED** for Defendant BJ Services on Plaintiff's Title VII claim.