**Billy W. LEE, Plaintiff–Appellant,**

v.

**ABF FREIGHT SYSTEM, INC., Defendant–Appellee.**

No. 93–2107.

United States Court of Appeals, Tenth Circuit.

April 26, 1994.

Mitchell A. Tyner (John A. Budagher, Budagher and Associates, Albuquerque, NM, with him on the brief), Silver Spring, MD, for plaintiff-appellant.

John V. Jansonius, of Haynes and Boone, L.L.P., Dallas, TX, for defendant-appellee.

Before WHITE, Associate Justice (Ret.),[*] TACHA and BRORBY, Circuit Judges.

TACHA, Circuit Judge.

Plaintiff Billy W. Lee appeals from the district court's grant of summary judgment denying Mr. Lee's claim that defendant, ABF Freight System, Inc. ("ABF"), discharged him in violation of the religious accommodation clause of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e(j) and 2000e–2(a). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

ABF hired Mr. Lee in 1986 as a road driver to transport freight between ABF facilities in various cities and states. The road drivers at the ABF facility in Albuquerque, such as Mr. Lee, are represented by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO, Local 492 ("Local 492"). All wages, hours, and terms and conditions of employment for road drivers are covered by a collective bargaining agreement. Drivers who have sufficient seniority can select a "bid run"—a fixed schedule of trips between two cities. Under the Albuquerque Dispatch Rules negotiated between ABF and Local 492, drivers who do not have the opportunity to select a "bid run" are placed on the "Extra Board." The Extra Board operates on· a "first-in/first-out" basis. The dispatch rules require drivers on the Extra Board to "pull"

---

[*] The Honorable Byron R. White, Associate Justice of the United States Supreme Court, (Ret.), sitting by designation, pursuant to 28 U.S.C. § 294(a).

any run for which they are called, provided they have not already completed the number of hours necessary to be excused. ABF cannot skip the order of assignment on the Extra Board without violating the labor contract and incurring a penalty. Drivers are entitled to a twenty-four hour break after completing six "tours of duty" (a tour of duty is one leg of a round trip). Six tours of duty per week is the standard expected of drivers at ABF.

Mr. Lee is a Seventh-day Adventist. His religious beliefs prohibit work from sundown Friday to sundown Saturday. In May 1990, Mr. Lee told ABF he would not work at any time that conflicted with his observance of the Sabbath. ABF then contacted Local 492 to request an exception to the dispatching rules to exempt Mr. Lee from a run that might require him to be on duty during his Sabbath. Local 492 refused to permit an exception for Mr. Lee. Next, ABF proposed a system under the labor contract by which Mr. Lee could minimize the occasions on which he might be called to work on his Sabbath. ABF proposed that Mr. Lee call ABF on Saturday mornings to place his name on the Extra Board and position himself so that he would be among the first drivers dispatched following sundown on Saturday. ABF believed this approach would allow Mr. Lee to complete six tours of duty prior to sundown on Friday and entitle him to a twenty-four hour break. ABF stated that this proposal, combined with Mr. Lee's vacation days, would excuse Mr. Lee from most situations when he would be called to work on his Sabbath. Without attempting ABF's proposed accommodation, Mr. Lee rejected it because it did not absolutely guarantee that he would be free from work on each observance of his Sabbath. The only accommodation proposed by Mr. Lee, prior to the commencement of this litigation, required that ABF guarantee that he be excused from work from Thursday morning at 6:00 a.m. until sundown on Saturday in order to ensure that he would complete his run prior to sundown Friday.[1]

Mr. Lee's position on the Extra Board was reached on Friday, June 8, Friday, June 22, and Friday, June 29, 1990 and he was not available to work. In accordance with the labor contract, Mr. Lee was issued a warning letter each time. On July 7,[2] Mr. Lee was again unavailable to work and was discharged. Mr. Lee's discharge was grieved pursuant to the labor contract and was reduced to a suspension without pay. Mr. Lee returned to work and, on Saturday, December 15, 1990, Mr. Lee's position on the Extra Board was reached and again he was unavailable for work. Under the terms of the labor contract, he was discharged for repeated unavailability for dispatch.

Mr. Lee brought suit against ABF under § 701(j) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(j), alleging religious discrimination. The district court subsequently granted ABF's motion for summary judgment on Mr. Lee's claims.

## II. ANALYSIS

### A. Standard of Review

We review the grant of summary judgment de novo, using the same standard applied by the district court. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics*, 912 F.2d at 1241. "However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*,

---

1. In his brief opposing ABF's Motion for Summary Judgment, Mr. Lee offered several additional accommodations.

2. The parties' briefs differ on whether Mr. Lee's discharge occurred on July 5, 7 or 9. The difference is immaterial to the resolution of this case.

477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). An issue of material fact is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat a properly supported motion for summary judgment. *Id.* at 252, 106 S.Ct. at 2512.

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion." 42 U.S.C. § 2000e–2(a)(1). "Religion" is defined to include only those "aspects of religious observance and practice" that an employer is able to "reasonably accommodate ... without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

■ For purposes of its summary judgment motion, ABF conceded that Mr. Lee had established a prima facie case of religious discrimination. Once the plaintiff has established a prima facie case, the burden then shifts to the employer to show "reasonable accommodation or [to show] that reasonable accommodation would be an undue hardship." *Pinsker v. Joint Dist. Number 28J,* 735 F.2d 388, 390 (10th Cir.1984); *see Toledo v. Nobel–Sysco, Inc.,* 892 F.2d 1481, 1486 (10th Cir.1989), *cert. denied,* 495 U.S. 948, 110 S.Ct. 2208, 109 L.Ed.2d 535 (1990). In this case the issue is whether ABF's efforts to adjust Mr. Lee's dispatch position and work schedule in response to his religious beliefs fulfils its obligation under § 701(j) to "reasonably accommodate to an employee's ... religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

Here, in addition to the programs already in place accommodating employees' desires to be free from work on certain days, ABF took several additional steps to specifically

accommodate Mr. Lee. First, ABF dispatches its drivers according to a seniority system governed by the collective bargaining agreement which allowed senior drivers to bid on runs that operate on a fixed schedule. The most senior drivers can select the days on which they prefer to work, while the junior drivers are dispatched based on their position on the Extra Board. ABF's method of allocating "runs" based on seniority was itself a significant accommodation of all of its employees.[3] Second, ABF met, unsuccessfully, with officials of Local 492 to seek agreement to special extra-contractual scheduling terms for Mr. Lee. Following its unsuccessful efforts to accommodate Mr. Lee outside the collective bargaining agreement, ABF attempted to accommodate Mr. Lee's conflict within the confines of the labor agreement. Third, ABF met with Mr. Lee to develop a plan to accommodate his Sabbath request. ABF suggested a plan in which Mr. Lee could manipulate his position on the Extra Board to maximize the occasions when he would complete six tours of duty prior to sundown on Friday. Following six tours of duty, Extra Board drivers are entitled to a twenty-four hour break which would accommodate Mr. Lee's observance of his Sabbath. Finally, the labor contract provided Mr. Lee, as a three-year-employee, with two weeks of vacation time which he could use to further insulate himself from work on his Sabbath.

■ Mr. Lee rejected ABF's proposals because they did not guarantee that he would always be free from work on every observance of his Sabbath. Title VII does not guarantee, however, that the employee will be given the accommodation of his choice. *Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 68–69, 107 S.Ct. 367, 371–72, 93 L.Ed.2d 305 (1986); *Pinsker,* 735 F.2d at 390. The defendant's efforts to reach a reasonable accommodation triggered Mr. Lee's duty to cooperate. *Toledo,* 892 F.2d at 1488; *Brener,* 671 F.2d at 146 ("employee has a correlative duty to make a good faith attempt to satisfy his needs through means offered by

---

3. "[A]n employer's reasonable accommodation of an employee's religious observances need not be initiated in response to the employee's protest." *Brener v. Diagnostic Ctr. Hosp.,* 671 F.2d 141, 144 n. 2 (5th Cir.1982); *see Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 78, 97 S.Ct. 2264, 2273–74, 53 L.Ed.2d 113 (1977).

the employer"); *Chrysler Corp. v. Mann,* 561 F.2d 1282, 1286 (8th Cir.1977) (where employee "will not attempt to accommodate his own beliefs through the means already available to him or cooperate with his employer in its conciliatory efforts, he may forego the right to have his beliefs accommodated"), *cert. denied,* 434 U.S. 1039, 98 S.Ct. 778, 54 L.Ed.2d 788 (1978).

We need not determine whether ABF's proposals constituted a "reasonable accommodation" under § 701(j)[4], 42 U.S.C. § 2000e(j), because we find that all of Mr. Lee's suggested alternatives impose an undue hardship on ABF.

■ An employer has the "statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." *Hardison,* 432 U.S. at 75, 97 S.Ct. at 2272. To require an employer "to bear more than a *de minimis* cost in order to [accommodate an employee's religious beliefs] is an undue hardship." *Id.* at 84, 97 S.Ct. at 2277. Reasonable accommodation does not mean that "an employer must deny the shift and job preference of some employees ... in order to accommodate or prefer the religious needs of others." *Id.* at 81, 97 S.Ct. at 2275. Nor does Title VII require an employer to violate a valid labor agreement to accommodate an employee. *Id.* at 79, 97 S.Ct. at 2274. "Any cost in efficiency or wage expenditure that is more than de minimis constitutes undue hardship." *Mann v. Frank,* 7 F.3d 1365, 1370 (8th Cir.1993). The cost of hiring an additional worker or the loss of production that results from not replacing a worker who is unavailable due to a religious conflict can amount to undue hardship. *See Hardison,* 432 U.S. at 84, 97 S.Ct. at 2277.

■ Mr. Lee asserts that the district court erred in finding that the proposed alternative accommodations would have imposed an undue hardship on ABF. Mr. Lee argues that ABF could have used a "voluntary runaround" to skip over his position on the Extra Board when it coincided with Saturday work. By skipping over Mr. Lee, however, the next driver on the Extra Board would have to be dispatched to cover Mr. Lee's run, effectively cutting short the subsequent drivers' time off. This practice would violate the provisions of the collective bargaining agreement, subject ABF to a potential fine and would clearly impose more than a de minimis cost on ABF. Next, Mr. Lee suggests he should be allowed to perform less than six tours of duty per week. This accommodation would mean Mr. Lee would function as a part-time employee but receive full-time benefits, resulting in a significant cost to ABF. *See Cook v. Chrysler Corp.,* 981 F.2d 336, 339 (8th Cir.1992). Mr. Lee's proposal that he reimburse ABF for the additional cost incurred by allowing him to work fewer than six tours of duty per week does not eliminate the cost to ABF, nor does reimbursement address the problem of allocating another driver to perform Mr. Lee's duty. Moreover, ABF is constrained by the National Labor Relations Act from unilaterally negotiating a separate agreement with Mr. Lee separate from the collective bargaining agreement. Mr. Lee contends that ABF should have transferred him to a position which did not conflict with his Sabbath. However, ABF cannot transfer a driver to another bargaining unit without violating the collective bargaining agreement. Further, following a transfer, Mr. Lee would lose his accrued seniority and be in a weaker position to avoid work on his Sabbath. *See Hardison,* 432 U.S. at 83 n. 14, 97 S.Ct. at 2276 n. 14. Finally, Mr. Lee's proposal that ABF bring in a "foreign" driver to cover Mr. Lee's tour of duty on his Sabbath would result in a significant additional cost to ABF. ABF would, in addition to the expenses associated

---

4. Mr. Lee now asserts that ABF's alternatives did not qualify as a "reasonable accommodation" because they did not eliminate the conflict between his religious practices and his employment requirements. At least two circuits have determined that, under *Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986), a reasonable accommodation is one that *eliminates* the employee's conflict between his religious practices and work requirements. *Cooper v. Oak Rubber Co.,* 15 F.3d 1375, 1380 (6th Cir.1994); *Wright v. Runyon,* 2 F.3d 214, 217 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1077, 127 L.Ed.2d 394 (1994). In this case we do not decide whether a reasonable accommodation is one which must completely eliminate the employee's conflict.

with Mr. Lee's employment, pay the cost of bringing the driver from another city. Additionally, due to the uncertainty regarding when Mr. Lee's position on the Extra Board would coincide with his observance of his Sabbath, it would be extremely difficult to anticipate the need for the foreign driver in advance of Mr. Lee's absence. After reviewing Mr. Lee's proposed alternative accommodations, we agree with the district court that they all impose more than a de minimis cost on ABF.

### III.  CONCLUSION

ABF has presented uncontroverted evidence that all Mr. Lee's proposed accommodations to guarantee that he would be free from duty on his Sabbath impose more than a de minimis cost on ABF. For that reason, we affirm the district court's order granting summary judgment in favor of ABF.