Gerald M. THOMAS, Plaintiff,

v.

Marvin T. RUNYON, Postmaster General, United States Postal Service, Defendant.

No. 97–1324–WEB.

United States District Court, D. Kansas.

Jan. 5, 1999.

Kathryn Gardner, Martin, Pringle & Oliver, Wallace & Swartz, L.L.P., Wichita, KS, Marc A. Powell, Powell & Brewer, LLP, Wichita, KS, for plaintiff.

Connie R. Calvert, Office of United States Attorney, Wichita, KS, for defendant.

### Memorandum and Order

WESLEY E. BROWN, Senior District Judge.

This matter is before the court on defendant's motion for summary judgment. (Doc. 28). The court finds that oral argument would not assist in deciding the issues presented.

Plaintiff contends that his former employer, the Postal Service, discriminated against him based upon his religion. In 1993, after plaintiff became a member of the Church of God, he informed the Postal Service he could no longer work on Saturdays due to his religious beliefs. Plaintiff's regular schedule as a mail carrier required him to work approximately five out of every six Saturdays. At first, plaintiff managed to avoid working most Saturdays either by using his annual leave or by finding a voluntary replacement. The Postal Service usually approved these measures. Plaintiff eventually requested several alternative forms of accommodation, each of which involved being permanently excused from working on Saturdays. The Postal Service asked the Letter Carriers Union to approve such an arrangement, but it refused to do so. After exhausting his annual leave, plaintiff refused to work on Saturdays and went AWOL a number of times. He received progressive discipline from November 1994 through April 1996, and was finally removed from employment on May 31, 1996. In his complaint, plaintiff alleges that the Postal Service engaged in religious discrimination in violation of 42 U.S.C. § 2000e–2(a)(1) by failing to reasonably accommodate his religious beliefs.

I. *Facts.*

For purposes of summary judgment, the court finds no genuine dispute as to the following facts.

Plaintiff is an individual male living and residing in Wichita, Kansas. He worked for United States Postal Service ("USPS") from February 28, 1987, until his termination on May 31, 1996. Roy E. Martin is the Postmaster, Wichita, Kansas, and has 36 years of service with USPS. Tom Brasser is the Labor Relations Specialist for the USPS, Wichita, KS.

Plaintiff was hired by USPS as a mail carrier on February 28, 1987. He worked in a part-time flex position until November of 1988. From November of 1988 until December of 1990, Plaintiff worked as a regular mail carrier at the Wassall post office in Wichita. From December of 1990 through May 31, 1996, the date of his termination, Plaintiff worked a bid route at the Corporate Hills Station in Wichita, and was placed on a rotating schedule that required him to work most Saturdays.

The National Collective Bargaining Agreement (CBA) between the USPS and the National Association of Letter Carriers (NALC), Article 41, Section 1A(3), requires the local union to regulate days off pursuant to the Local Memorandum of Understanding (LMOU). Larry Gunkel is the President of the local union.

Over 400 regular residential letter carriers are employed in Wichita. By virtue of the LMOU, the Plaintiff, like all the other residential letter carriers, was placed on a rotating work schedule that required him to work five Saturdays out of six. The rotating schedule was determined by the vote of the letter carriers. USPS management did not have the authority to change the work schedule because it would violate the contractual commitment in the LMOU.

Toward the end of 1993, the Plaintiff became a member of the Church of God.

In January of 1994, Plaintiff informed the USPS, through Mark Kershen, his station manager, that because of his religious beliefs he could not work on the Sabbath (Saturday), and asked for all Saturdays off.

USPS and the NALC have agreed to a seniority system in the CBA and the LMOU, whereby the most senior employees have first choice through a bidding process for job assignments as they become available.

Plaintiff was required to obtain approval from USPS management to take annual leave on Saturdays. In 1994 Plaintiff submitted annual leave requests to take leave on twenty-nine (29) Saturdays during that year. USPS management approved twenty-five (25) of the twenty-nine (29) requests. In 1995 Plaintiff submitted annual leave requests to take leave on twenty-two (22) Saturdays that year. USPS management approved twenty (20) of twenty-two (22) requests.

USPS management approved work schedule changes so that Plaintiff could trade with other letter carriers who agreed to work for Plaintiff on Saturdays.

USPS management suggested that Plaintiff consider changing crafts and bidding on a position that would not have required Plaintiff to work on Saturdays. Previously, another letter carrier, Mark Metz, also requested accommodation due to religious beliefs that prohibited his working on Saturdays. The Union refused to allow management to assign Metz, as a letter carrier, to Saturday as a permanent day off. Metz transferred to the maintenance craft to get Saturdays off.

Although management suggested that he bid on other positions, according to Plaintiff, Mr. Brasser and others told him it probably would not do any good because of his lack of seniority. Pl.Exh. A at 29–30. Plaintiff did not bid on another craft within the USPS. One of the reasons he did not is because of Mr. Brasser and others telling him it wouldn't do any good. *Id.*

USPS Postmaster Martin and Labor Relations Specialist Tom Brasser asked Larry Gunkel, President of the Local Union, to have the Union issue a waiver excusing Plaintiff from the Saturday work schedule, which was established in the LMOU. The Local Union refused to grant the requests for such a waiver.

Instead, Plaintiff requested that he be excused from working every Saturday, while remaining in the residential letter carrier craft. Plaintiff suggested a number of accommodation alternatives. They are:

(1) Maintain his route as a letter carrier and receive Saturdays and Sundays off;

(2) Maintain his route as a letter carrier and have a substitute carry his route on Saturdays;

(3) Maintain his route as a letter carrier and have a part-time flexible or unassigned regular employee carry his route on Saturdays;

(4) Maintain his route as a letter carrier with all Saturdays off and be available to work on Sunday;

(5) Maintain his route as a letter carrier, but work only four days a week.

Under each of these accommodation alternatives, Plaintiff would have been permanently excused from working Saturdays. For that reason, each alternative would have violated the LMOU, and the Local Union would not agree to these alternatives.

The Local Union President, Larry Gunkel, also told Plaintiff directly that it was not possible to grant Plaintiff an exemption from the rotating schedule established by the LMOU so Plaintiff would not have to work on Saturdays.

Plaintiff refused to work on Saturdays and went AWOL a number of times. As a result, he received the following progressive discipline: (1) 11/2/94—seven day suspension, which was reduced to a letter of warning; (2) 11/23/94—14 day suspension, which was reduced to a 7 day suspension through the grievance process; (3) 12/6/94—14 day suspension; (4) 1/9/95—Notice of Removal held in abeyance; (5) 6/16/95—Notice of Removal—plaintiff was removed, but work assignment was held pending further grievance/arbitration procedures, which resulted in a pre-arbitration settlement on 1/5/96 that allowed Plaintiff to return to work with the understanding that he would work his bid assignment as posted; (6) 4/26/96—plaintiff was

removed from Postal Service after he went AWOL again.

## II. *Defendant's Motion for Summary Judgment.*

The standards and procedures for summary judgment are well established and will not be fully repeated here. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In essence, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.*

■ Title VII makes it an unlawful employment practice for an employer to discharge any individual, or to otherwise discriminate with respect to the terms of employment, because of the individual's religion. 42 U.S.C. § 2000e–2(a)(1). The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that it is unable to reasonably accommodate to the observance or practice without undue hardship on the conduct of the business. § 2000e(j). Defendant argues that all of the accommodations proffered by plaintiff would have violated the terms of its labor agreement with the union, and that under *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977) the duty to accommodate did not require it to take steps inconsistent with a collective bargaining agreement. It thus contends there is no evidence it failed to reasonably accommodate plaintiff's religious beliefs.[1] In response, plaintiff asserts that *Hardison* is factually distinguishable and that newer EEOC guidelines have "superseded" that ruling.

In attempting to distinguish *Hardison* factually, plaintiff asserts that the Postal Service has a much more flexible work force than the employer in *Hardison* and that it would not have been difficult for the Postal

Service to have someone fill in for him on Saturdays. He further contends *Hardison* was premised on the fact that a substitute would have caused the employer in that case to incur overtime pay, whereas the Postal Service would not incur any significant overtime expense for a substitute. Even assuming such facts to be true, however, they are immaterial to the issue here. Defendant's motion does not argue that a permanent substitute on Saturdays would cause too much disruption or result in too much expense; it argues that such an arrangement would violate the collective bargaining agreement. *Hardison* makes clear that the duty to accommodate does not extend to actions that violate a collective bargaining agreement.

Plaintiff also attempts to distinguish *Hardison* by citing an EEOC guideline issued after that decision, 29 C.F.R. § 1605.2(d)(i) (1988), which states in part that "reasonable accommodation is generally possible where a voluntary substitute with substantially similar qualifications is available," and further provides that the obligation to accommodate requires employers to facilitate the securing of voluntary substitutes through such means as publicizing policies regarding voluntary substitution, promoting an atmosphere in which such substitutions are favorably regarded, and providing a central file, bulletin board or other means for matching voluntary substitutes with positions for which a substitute is needed. *Id.* Plaintiff contends the Postal Service failed to do all of these things in his case. He also argues that the Postal Service, unlike the employer in *Hardison,* never sought to find him another position. Plaintiff thus contends there is a genuine issue as to whether the Postal Service attempted a reasonable accommodation of his religious beliefs.

■ The court finds these arguments unavailing. Pursuant to the labor agreement between the Postal Service and the Letter Carriers Union, all residential letter carriers were required to work five Saturdays out of six. Each of the alternatives suggested by

---

1. The court agrees with the defendant that plaintiff failed to set forth any theory of "intentional religious discrimination" in the Pretrial Order

separate and distinct from his claim that the Postal Service failed to reasonably accommodate his religious beliefs. *See* Def.Repl.Br. at 14–15.

plaintiff to avoid working on Saturday, including arranging a voluntary "permanent swap" with some other employee, would have violated this provision of the agreement by permanently excusing plaintiff from Saturday work. The undisputed facts show that the Postal Service was willing to consider an alternative arrangement for Saturday work and asked the Union to waive the requirement in plaintiff's case, but the Union refused to do so. The deposition testimony submitted indicates the Union viewed such an arrangement as a violation of the rotating day-off schedule that was approved by vote of its members. *Cf. Hardison*, 432 U.S. at 81, 97 S.Ct. 2264 (Title VII does not require employers to "deny the shift and job preferences of some employees" or to "deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others."). Clearly, nothing in the regulations alters *Hardison's* rule that accommodation violative of a collective bargaining agreement constitutes an undue hardship upon the employer.[2] Under the circumstances, the defendant's asserted failure to adopt plaintiff's suggested accommodations cannot support a claim of religious discrimination. *Cf. Mann v. Frank*, 7 F.3d 1365 (8th Cir.1993) (No violation of the duty to accommodate where the Union refused the Postal Service's request to assign another worker to take plaintiff's Saturday shift, which would have violated collective bargaining agreement's provisions governing overtime). Nor can the alleged failure of the defendant to find plaintiff another position support a claim. The Postal Service could not unilaterally reassign plaintiff to another position; under the collective bargaining agreement assignments for open positions were determined by bids, with the most senior members having first choice. The defendant could, and did, recommend that plaintiff bid for another job, but plaintiff did not do so. The fact that the Postal Service cautioned plaintiff that he was unlikely to get such a position because he lacked seniority—the truth of which plaintiff does not dispute—does not constitute a violation of the employer's duty of reasonable accommodation. To the extent there was any chance of obtaining an open position with Saturdays off, it was incumbent upon plaintiff to submit a bid for it.[3] *Lee v. ABF Freight System, Inc.*, 22 F.3d 1019, 1022 (10th Cir.1994) (the defendant's efforts to reach a reasonable accommodation trigger the plaintiff's duty to cooperate). The Postal Service cannot be faulted for failing to accommodate plaintiff's desire for another position.

The Postal Service approved plaintiff's use of leave to avoid working Saturdays on all but a few occasions. It approved the use of substitutes when they could be found. It sought a waiver from the union of the requirement that all letter carriers work five out of six Saturdays. It recommended that plaintiff bid for a position with Saturdays off. These steps are consistent with the employer's duty to attempt a reasonable accommodation of an employee's religious beliefs. *Cf. Johnson v. U.S. Postal Service*, 497 F.2d 128 (5th Cir.1974) (Postal Service made good faith effort at accommodation by offering to allow plaintiff as many Saturdays off as possible or to recommend a transfer). Beyond these steps, the accommodations sought by plaintiff would have violated the collective bargaining agreement with the union. *Hardison's* analysis thus applies:

> Collective bargaining, aimed at effecting workable and enforceable agreements between management and labor, lies at the core of our national labor policy, and seniority provisions are universally included in these contracts. Without a clear and express indication from Congress, we cannot agree ... that an agreed-upon seniority system must give way when necessary to accommodate religious observances.
>
> \* \* \* \* \* \*
>
> It would be anomalous to conclude that by "reasonable accommodation" Congress

---

**2.** *See* 29 C.F.R. § 1605.2(e)(2) ("Arrangements for voluntary substitutes and swaps ... do not constitute an undue hardship *to the extent the arrangements do not violate a bona fide seniority system.*") (emphasis added).

**3.** Plaintiff testified at one point in his deposition that he did not bid on other crafts because management indicated he probably didn't have enough seniority to get a position. At another point he explained that he did not bid because "[a]s far as I know, there wasn't anything to bid on." Thomas Depo. at 94.

meant that an employer must deny the shift and job preference of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others, and we conclude that Title VII does not require an employer to go that far.

*Id.*, 432 U.S. at 79, 81, 97 S.Ct. 2264. Under the circumstances, there is no genuine issue of fact for trial and the Postal Service is entitled to judgment as a matter of law on plaintiff's claim that it failed to reasonably accommodate his religious beliefs.

III. *Conclusion.*

Defendant's Motion for Summary Judgment (Doc. 28) is hereby GRANTED. The clerk is directed to enter judgment of dismissal in favor of the defendant. IT IS SO ORDERED this 5th day of January, 1999, at Wichita, Ks.