**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 98-11468

_____

Lynn L. Weber,

Plaintiff-Appellant,

v.

Roadway Express, Inc.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

January 7, 2000

Before KING, Chief Judge, REYNALDO G. GARZA, and EMILIO M. GARZA, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

BACKGROUND

On October 20, 1997, Weber filed suit against Roadway Express, Inc. ("Roadway")

alleging employment discrimination on the basis of Weber's religion in violation of 42 U.S.C. §

2000(e)(2)(a). On June 15, 1998, Roadway filed its Motion for Summary Judgment. On

September 22, 1998, the district court granted Roadway's Motion for Summary Judgment and

entered judgment against Weber. On October 7, 1998, Weber filed his Motion for

Reconsideration which was denied by the trial court on November 13, 1998. This appeal

followed.

Roadway is a national trucking company in the business of hiring truck drivers to transport goods to various regions of the United States. Roadway's facility in Irving, Texas serves primarily as a station for long-haul, two-driver trips ("runs") that require the drivers to spend the night in the truck.

Roadway utilizes a system for dispatching drivers that incorporates several dispatch boards. On the "A Board" are single drivers who make runs of ten hours or less. On the "B Extra Board" are drivers who perform two-person journeys that last more than ten hours. Drivers on these two boards have some degree of seniority and are able to bid on runs based on their seniority. Drivers from the B Extra Board are dispatched solely by seniority, and when a two-person, overnight run cannot be filled by a team from the B Extra Board that has bid on the run, the vacancy, or vacancies if both positions are unfilled, will be satisfied by other drivers on the B Extra Board or the Casual Board.

When hired, all drivers are conferred "casual" status, meaning they are dispatched on runs not bid on or otherwise filled by regular, full-time drivers. Drivers are dispatched from the casual board on an as-needed basis, usually when a two-person, overnight run cannot be filled by either a team of two drivers that has bid on the run or by one or more drivers from the B Extra Board. Casual drivers are dispatched in the order in which they have returned from other runs. Driver compensation for any run depends on the number of miles logged.

In early July of 1996, Weber applied for a position as a truck driver with Roadway. As a Jehovah's Witness, Weber asserts that his religious beliefs require that he refrain from making long-haul overnight runs with a female partner who is not his wife. The sincerity of Weber's religious beliefs appears to be undisputed.

Approximately two weeks after being hired, Weber discovered that Roadway employed female drivers on overnight runs. Weber contacted his supervisor, John Mizell, to notify him that he could not accept any run that included a female partner. Mr. Mizell informed Weber that working with women was part of his job and that he would have to work with women or would not receive any driving assignment. Subsequently, Weber filed suit against Roadway alleging a failure to accommodate his religious beliefs pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1).

## STANDARD OF REVIEW

This court exercises *de novo* review of the granting of a summary judgment. *SMWNTS Holdings, Inc. v. DeVore*, 165 F.3d 360, 364 (5th Cir. 1999). Summary judgment shall be entered in favor of the moving party, if the record, taken as a whole, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.*; Fed.R.Civ.P. 56(c). A factual dispute is "genuine" where a reasonable jury could return a verdict for the non-moving party. *Id.*; *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997). If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial and summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986). The district court's findings of fact are reviewed on the "clearly erroneous" standard. Fed. R. Civ. P. 52(a).

Weber's appeal of the trial court's refusal to grant his motion for reconsideration or to alter or amend judgment is reviewed under an abuse of discretion standard, and the trial court's decision need only be reasonable to be upheld. *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 353 (5th Cir. 1993). This Court has stated the trial court's discretion in such matters

is considerable. *Id.* at 355.

ANALYSIS

I.

The district court did not err in granting Roadway's Motion for Summary Judgment. Title VII of the Civil Rights Act of 1964, as amended in 1972, makes it unlawful for an employer to discriminate against an employee on the basis of religion. 42 U.S.C. § 2000e-2(a)(1). An employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees, but is not required to incur undue hardship. *Eversley v. Mbank Dallas*, 843 F.2d 172, 175 (5th Cir. 1988). "Undue hardship" exists, as a matter of law, when an employer is required to bear more than a *de minimus* cost. *Transworld Airlines, Inc. v. Hardison*, 432 U.S. 63 at 84 (1977); *Brener v. Diagnostic Center Hosp.*, 671 F.2d 141, 146 (5th Cir. 1982).

To establish a prima facie case of religious discrimination under Title VII, a plaintiff must establish that he had a *bona fide* religious belief that conflicted with an employment requirement, that he informed the employer of his belief, and that he was discharged for failing to comply with the conflicting employment requirement. *See Brener*, 671 F.2d at 144. Roadway does not contest that Weber has established a prima facie case. The burden therefore shifts to Roadway to show that it was unable to reasonably accommodate Weber's beliefs without undue hardship. *Id.*

The district court concluded that the reasoning of the Supreme Court's decision in *Hardison* supports a finding that skipping over Weber in scheduling to accommodate his religious beliefs would force Roadway to deny the run and job preferences of Weber's co-workers, which would constitute an undue burden. *Hardison*, 432 U.S. at 81. ("It would be analmalous to

conclude that by 'religious accommodation' Congress meant that an employer must deny the shift and job preferences of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer religious needs of others, and we conclude that Title VII does not require an employer to go that far"). The fact that Weber's casual co-workers have no contract entitling them to a particular run or job preference does not exclude the instant case from *Hardison*'s coverage.

Weber claims that Roadway's refusal to accommodate Weber's religious beliefs, by skipping over Weber in scheduling when he would be paired with a woman driver, amounts to unlawful employment discrimination under Title VII because Roadway would not be required to endure an undue burden or accept more than a *de minimus* cost. According to Weber, Roadway would not be subject to an undue burden by skipping over him because Roadway already allows drivers to be skipped for various secular reasons.[1] Weber further contends that Roadway was not entitled to summary judgment because it failed to make any good faith effort to accommodate.[2] Lastly, Weber argues that Roadway's defenses are based on unlikely hypothetical situations and

---

[1] There is evidence that drivers are allowed to "divorce" other drivers if they no longer wish to ride together. Similarly, a driver can submit a "refuse-to-ride" letter when the driver does not want to be paired with another specific driver with whom he has previously ridden. Finally, the evidence shows that Defendant occasionally allows a driver to be passed over for an emergency or for personal reasons.

[2] When Weber informed his supervisor, John Mizell ('Mizell') of the conflict between Roadway's employment policies and his religious beliefs, Mizell summarily rejected Weber's proposal and refused to discuss accommodation. Mizell's response was to inform Weber that if he could not ride with females he was terminated. No cases cited by Roadway support the proposition that an employer refusing to offer any sort of reasonable accommodation has not violated Title VII.

that casual drivers do not have a contractual right to be called for any specific run.[3]

Roadway argues that the district court properly granted summary judgment because "skipping over" Weber when paired with a woman driver to allow another driver to take the run is beyond the requirements of Title VII. Roadway relies on several cases to support its position that an employer is not required to rearrange its schedule and force employees to "trade shifts" to accommodate the religious practices of an employee. Roadway maintains that in *Brener* and *Eversly*, this court relied on the Supreme Court's decision in *Hardison* when it held that forcing "trade shifts" to accommodate religious practices was not required by Title VII. Roadway further relies on *Lee v. ABF Freight System, Inc.*, 22 F.3d 1019 (10th Cir. 1994) (holding that the plaintiff's "voluntary runaround" proposal of skipping over his position on the drivers' dispatch board was unreasonable as a matter of law). Roadway also asserts that business exigencies trump any employee leave policies or "refusal to ride" practices that on occasion allow drivers to be skipped over for various secular reasons.

First, skipping over Weber constitutes more than a *de minimus* expense because this unduly burdens his co-workers, with respect to compensation and "time-off" concerns. As the district court found, skipping over Weber to avoid pairing with a female driver may adversely affect other drivers. For example, the run Weber passes up might lead his substitute to accept a shorter run than she might otherwise, which provides less compensation and is therefore less valuable. Weber's substitute might also receive less rest and time off between runs than he or she

---

[3] The district court limited its discussion to Weber as a casual driver and did not consider Roadway's arguments concerning the burden of accommodating Weber if he became a regular driver. The district court stated that if Weber were a regular driver with some degree of seniority, its analysis would differ because the regular drivers' seniority is governed by a collective bargaining agreement, and accommodating Plaintiff could effect those rights.

might otherwise. *See Cook v. Chrysler Corp*., 981 F.2d 336, 338 (8th Cir. 1992) (holding that hardship need not be quantifiable in economic terms). The mere possibility of an adverse impact on co-workers as a result of "skipping over" is sufficient to constitute an undue hardship. *See Hardison*, 432 U.S. at 81 (the Supreme Court frowned upon a proposed accommodation that affected the possible job preferences of other employees); *See* also *Brener*, 671 F.2d 141 (5th cir. 1988), and *Eversley*, 843 F.2d 172 (5th Cir. 1988) (finding that an employer is not required to rearrange its neutral scheduling practices to accommodate an employee).

*Lee v. ABF Freight System, Inc.*, 22 F.3d 1019 (10th Cir. 1994), which also arose in the context of the interstate trucking industry, involved facts similar to those at issue here. In *Lee*, the plaintiff was a truck driver who requested that his employer alter its usual method of dispatching drivers to allow him to be off on Saturdays. As in this case, the employer in *Lee* utilized an "extra board" and dispatched drivers on the basis of seniority. Similar to Weber, the employee in *Lee* proposed a "voluntary runaround" system to skip over his position on the drivers' board whenever it coincided with Saturday work. Relying in part on *Hardison*, the court found, as a matter of law, that the employer could not accommodate the Plaintiff's religious beliefs without undue hardship. Specifically, it emphasized that, "by skipping over Mr. Lee, however, the next driver on the 'extra board' would have to be dispatched to cover Mr. Lee's run, effectively cutting short the subsequent driver's time off." *Lee*, 22 F.3d at 1023. Thus, as in this case, the accommodation of Lee, because it would unavoidably result in alteration of other employees' schedules, constituted an undue hardship.

Weber attempts to distinguish *Lee* by arguing that the "time off" in *Lee* involved Department of Transportation mandated time off. This distinction is not persuasive because the

emphasis in *Lee* was not on compliance with Department of Transportation regulations, but on changing the schedules of other employees.

Second, Roadway's hypotheticals regarding the affects of accommodation on other workers are not too remote or unlikely to accurately reflect the cost of accommodation. Weber argues that the district court, by accepting the hypothetical about how other drivers would be affected, did not view all facts and inferences therefrom in the light most favorable to the nonmovant.

Yet while Weber argues that Roadway's concerns are too speculative, the district court rightly concluded that federal law does not require Roadway to wait until it felt the effects of Weber's proposal by foregoing a run or skipping over a female driver. *See Beadle v. City of Tampa*, 42 F.3d 633 (11th Cir. 1995) (the City could deny request of trainee to skip training rotation because of Sabbath out of concern that not rotating would negatively affect the recruits training); *see also Favero v. Huntsville Independent School District*, 9 F.Supp. 2d 1281 (S.D.Tex. 1996) (court rejected plaintiff's suggested approach that would permit employers to deny requests only when they are certain in advance that a requested accommodation would cause an undue hardship). In *Hardison*, the Supreme Court found that under Title VII an undue burden is present if the proposed accommodation would force changes in the schedules of other employees and alter the employer's otherwise neutral procedure. *Hardison*, 432 U.S. at 81.

Third, we address Roadway's practice of allowing drivers to be skipped for various secular reasons and Weber's suggestion that he could be easily accommodated. *See* footnote one, *supra*. Weber's argument with regard to the secular exceptions is unpersuasive. Unlike in the situation of Weber's accommodation, "refuse to ride" requests and other secular exceptions to the

assignment system would be and are only accommodated if business circumstances dictate. In contrast, Weber's accommodation would be inflexible. Therefore, whereas flexible secular exceptions are *de minimus*, the inflexible religious exception is not because it effects the scheduling preferences of other employees.

Finally, Roadway was not entitled to summary judgment even though it failed to make an effort to accommodate. Weber relies on *Heller v. Ebb Auto Co.*, 8 f.3d 1433, 1440 (9th Cir. 1993), which states that the employer must establish that it at least initiated good faith effort to accommodate. However, the district court is correct in observing that even the court in *Heller* does not mandate such an effort if the employer can show that any accommodation would impose an undue burden. *See Id.* Roadway relies on *EEOC v. Townley Eng'g. Mng. Co.*, 859 F.2d 610, 615 (9th Cir. 1988) (finding that an employer is not required to engage in fruitless dialogue when it is clear that no accommodation could be made without undue hardship). The only suggested accommodation, that of skipping over assignments involving women, because of the reasons asserted by Roadway, would impose more than a *de minimus* cost.

Accordingly, the district court was correct in granting summary judgment.

## II.

The district court did not err in denying Weber's Rule 59(e) Motion for Reconsideration or to Alter and Amend Judgment. Weber argues that the district court erred in refusing to reconsider its granting of summary judgment based upon newly discovered evidence that

Roadway failed to produce. Yet like the district court, we are unpersuaded by Weber's claim that he sought the documents earlier, but that Roadway withheld them.[4] Furthermore, the district court correctly found that the "refuse-to-ride" letters at issue shed no new light on the questions addressed at summary judgment.

It is within the district court's discretion whether to reopen a case under Fed.R.Civ.Pro. 59(e). *Edward H. Bohlin Co., Inc. v. Banning Co.*, Inc., 6 F.3d 350, 355 (5th Cir. 1993). There is no indication that the district court abused its discretion in denying the request for reconsideration. The district court correctly found that Weber's motion to amend the summary judgment record was a transparent effort to avoid the adverse ruling.

CONCLUSION

This appeal arose from a Title VII claim of religious discrimination in employment by Weber, a trucker and Jehovah's Witness who was dismissed because his religious beliefs prevent him from making long-haul overnight trips with women truckers. The district court did not err in granting Roadway's Motion for Summary Judgment or in denying Weber's Rule 59(e) Motion for Reconsideration or to Alter and Amend Judgment. Accordingly, we AFFIRM the district court's granting of summary judgment and its denial of Weber's Rule 59(e) Motion for Reconsideration or to Alter and Amend Judgment.

---

[4] "As Defendant points out, Plaintiff was aware of the refuse-to-ride letters when John Mizell's deposition was taken on May 12, 1998. Defendant filed its motion for summary judgment on June 15, 1998, and Plaintiff did not respond to the motion until July 14, 1998. Only when Plaintiff filed his response did he serve Defendant with supplement requests for production, requesting the refuse-to-ride letters. Additionally, the depositions Plaintiff now submits were not taken until early September 1998." District Court Order Denying Motion for Reconsideration or to Alter or Amend Judgment.